Madlyn Gleich Primoff, Esq.
madlyn.primoff@freshfields.com
Abbey Walsh, Esq.
abbey.walsh@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 277-4000
Facsimile:      (212) 277-4001

Attorneys for the Foreign Representatives

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| AIR BERLIN PLC & CO. LUFTVERKEHRS KG, | Case No. 17-[_____] |
| Debtor in a Foreign Proceeding. | |

**_EX PARTE_ APPLICATION FOR ORDER (A) GRANTING PROVISIONAL
RELIEF AND INJUNCTION AND (B) SCHEDULING HEARING
PURSUANT TO 11 U.S.C. §§ 105(A) AND 1519**

Thomas Winkelmann and Frank Kebekus, in their capacity as the foreign representatives (each a "Foreign Representative" and together, the "Foreign Representatives") of Air Berlin PLC & Co. Luftverkehrs KG in _Vorläufiges Insolvenzverfahren_ ("Air Berlin" or the "Debtor"), by their undersigned counsel, Freshfields Bruckhaus Deringer US LLP, respectfully submit this application (the "Application"), under Sections 105(a) and 1519 of Title 11 of the United States Code (the "Bankruptcy Code"), seeking:

(a)    immediate entry of a temporary restraining order;

(b)    after ten days' notice and a hearing on the Application (but only to the extent unresolved objections exist), a preliminary injunction order pending this

Court's entry of an order recognizing the Debtor's foreign proceeding (described below) as a "foreign main proceeding";

(c) scheduling of a hearing on the Application; and

(d) such other relief as may be just and proper.[1]

## PRELIMINARY STATEMENT

1. The Debtor is a global airline carrier that is headquartered in Germany and is the second-largest airline in Germany.

2. On August 15, 2017, the Debtor applied to the Local District Court of Berlin-Charlottenburg, Insolvency Court (the "German Court") for commencement of an insolvency proceeding (the "Foreign Main Proceeding") known in Germany as *Vorläufiges Insolvenzverfahren* under the German Insolvency Code. On the same day, the German Court opened preliminary insolvency proceedings permitting the Debtor to proceed as a debtor-in-possession, appointed a preliminary custodian to oversee the Debtor during the preliminary insolvency proceedings, and prohibited any new, and stayed any pending, enforcement actions against the debtor's movable assets.

3. However, no stay applies to the Debtor's assets in the United States upon commencement of this Chapter 15 case (the "Chapter 15 Case") until the Court grants recognition of the Foreign Representatives' Petition. In addition, while the Debtor, as a debtor-in-possession, retains full authority to administer its assets in the ordinary course of business, its right to administer its assets in the United States prior to formal recognition of

---

[1] In support of the Application, the Foreign Representatives have filed contemporaneously herewith the *Declaration of Frank Kebekus in Support of the Ex Parte Application for Order (A) Granting Provisional Relief and Injunction and (B) Scheduling Hearing* (the "Kebekus Declaration"), which is specifically in support of the Application. In addition, the Foreign Representatives also have filed contemporaneously herewith the *Verified Petition for Recognition and Chapter 15 Relief* (the "Petition"), which is incorporated herein by reference.

the Foreign Main Proceeding as a "foreign main proceeding" is uncertain as a matter of U.S. law.

4.  Accordingly, the Foreign Representatives now seek certain provisional relief between the date hereof and this Court's entry of the Foreign Representatives' proposed order recognizing the Foreign Main Proceeding in Germany as a "foreign main proceeding" within the meaning of Section 1517 of the Bankruptcy Code. Among other things, the Foreign Representatives request that this Court immediately order the application of Sections 361 and 362 of the Bankruptcy Code to this case and authorize the Foreign Representatives to administer the Debtor's assets in the United States. Critically, the Debtor's situation is not any different from that of the many U.S. airline debtors that have sought relief under Chapter 11, other than the fact that those airlines automatically enjoyed the breathing room permitted by Section 362 of the Bankruptcy Code.

5.  The Debtor has significant United States assets. For instance, the Debtor operates a fleet of seventeen (17) leased aircraft that fly into and out of airports within the United States and holds contracts relating to the use of United States airport facilities and the fueling and maintenance of the aircrafts while in the United States. Consequently, to prevent the detrimental impact to the Debtor's global operations that would be caused by the termination of any of these contracts or the seizure of one or more of the Debtor's planes that service cities within the United States, and to facilitate the continuation of the Debtor's business during the pendency of the Foreign Main Proceeding in accordance with German law, the Debtor requires certain provisional relief, including, in particular, the protection of a stay order.

6.  Without the relief requested herein, the Debtor will be faced with the prospect of a significant disruption to its operations occurring at any time. Chapter 15 of the Bankruptcy Code is intended to prevent precisely these negative effects on a foreign debtor's

operations and to complement and facilitate corporate rehabilitations in a foreign debtor's home country.

7. Therefore, and for reasons further described herein and in the Kebekus Declaration, the Foreign Representatives respectfully submit that provisional relief is urgently needed to protect the Debtor's United States assets and to aid the Debtor's Foreign Main Proceeding.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by this Court in connection with the Petition to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9. This case has been properly commenced pursuant to Section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the Foreign Main Proceeding under Section 1515 of the Bankruptcy Code.

10. Venue is proper pursuant to 28 U.S.C. § 1410(1). Air Berlin's principal U.S. assets are located in the Southern District of New York. Air Berlin owns two U.S. bank accounts, both of which are held at a branch of Citibank, located at 111 Wall Street in New York, New York. One account is used to collect revenues for certain ticket sales and millions of dollars flow through this account on an annual basis. It is the Debtor's principal collection account for revenues in the United States. The other account is used to process certain tax payments.

4

11. The statutory bases for relief are Sections 105(a) and 1519 of the Bankruptcy Code, and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

## BACKGROUND

12. In operation since 1978, Air Berlin is a global airline carrier based in Germany. In 2016, Air Berlin operated 139 aircraft with flights to destinations in Germany, Europe, and outside Europe, including the United States, and provided passenger service to approximately 28.9 million passengers. Within the first seven months of 2017, the Debtor carried approximately 13.8 million passengers. The Debtor employs approximately 8,481 employees. The Debtor is a member of the Oneworld alliance, participating with other member airlines in issuing tickets, code-share flights, mileage programs, and other similar services.

13. The Debtor's United States business is critical to its overall global operations. Air Berlin operates flights between Germany and eight U.S. cities: New York, Boston, Los Angeles, Miami, Chicago, San Francisco, Fort Myers, and Orlando. Between April and July 2017, the Debtor operated approximately 400 to 700 flights into and out of the United States on a monthly basis, carrying between 100,000 to 160,000 passengers per month, and generating net monthly revenue of between €30 to €60 million.[2] The Debtor's United States business makes up between 15% and 25% of the Debtor's total monthly revenues.

14. Air Berlin also has an Intercompany Services Agreement with Air Berlin Americas, Inc. ("ABA"). Under this agreement, ABA performs marketing and sales services for Air Berlin in the United States. Performance under the Intercompany Services Agreement is the sole purpose of ABA and it has employees in the United States in furtherance of this end.

---

[2] This is equivalent to a net monthly revenue of between $35 million to $71 million based on the foreign exchange rate in effect as of the date hereof.

5

15. As set forth in the Petition, to undertake a comprehensive court-supervised insolvency process, the Debtor (along with several of its affiliates, including the General Partner), on August 15, submitted to the German Court an application for the commencement of the Foreign Main Proceeding in Germany pursuant to the German Insolvency Code (*Insolvenzordnung*), the German law that governs the initiation, process, and termination of insolvency proceedings for all entities, including the Debtor. The Debtor was represented in that proceeding by Foreign Representative Thomas Winkelmann, in his capacity as the executive director and authorized representative of the General Partner. That day, the German Court issued an order (the "Order"), thereby commencing the Foreign Main Proceeding in Germany. The Order of the German Court became effective when issued. Under the Order, the Debtor is authorized to continue to manage and dispose of its assets as a debtor-in-possession, subject to the oversight of a court-appointed custodian.

16. To that end, Mr. Winkelmann, as authorized representative of the Debtor (by virtue of his position as executive director of the General Partner) and Dr. Kebekus, in his capacity as Chief Restructuring Officer of the Debtor and pursuant to a general power-of-attorney dated August 18, 2017 (the "POA") granted to him by the Debtor, are authorized to administer the Debtor's during the pendency of the insolvency proceedings in Germany and the U.S. for the Debtor.

17. As the preliminary insolvency process moves forward, the German Court may also take other actions, including the establishment of a preliminary creditors' committee, composed of creditor representatives, and a prohibition or temporary stay on actions of foreclosure or enforcement that may be brought against the debtor's assets. The purpose of preliminary insolvency proceedings is to allow for the continuation of the debtor's business and continued cash-generation while actions can be taken to prepare for formal insolvency proceedings.

18. Usually within 90 days, if and when the court-appointed custodian determines that the debtor is insolvent under German law and that the debtor has sufficient assets to cover the costs of an insolvency proceeding, the court will order the opening of formal insolvency proceedings. Formal insolvency proceedings may involve a liquidation of the debtor's assets, with proceeds being distributed to the creditors, or may involve the use of an insolvency plan to rehabilitate and reorganize the debtor's business.

19. The aim of the Foreign Main Proceeding is to ensure the preservation of Air Berlin's assets and the continuation of its economic activity under the conditions and pursuant to the limitations provided for by applicable laws. To support the Debtor during its insolvency process, the KfW IPEX-Bank—a German government-owned development bank—has made bridge funding available to Air Berlin pending the result of the Foreign Main Proceeding in the amount of EUR 150 million.

20. To protect the Debtor's United States assets and contractual interests, the Foreign Representatives have filed the Petition contemporaneously herewith, seeking recognition of their status as the Debtor's foreign representatives, as defined in Section 101(24) of the Bankruptcy Code, and recognition of the Foreign Main Proceeding as a "foreign main proceeding" under Section 1515 of the Bankruptcy Code.

21. The Application seeks comparable protection, on a provisional basis, with respect to potential creditor actions and interference with property located in the United States.

22. As described more fully below and in the Kebekus Declaration, in addition to its German assets, the Debtor also owns assets in the United States, which are critical to its ongoing operations. The Debtor has valuable contractual interests in the United States, the termination of which will jeopardize its ability to continue operating its flights to and from United States airports. In addition, because the Debtor provides a substantial amount of

passenger service to the United States, at any given time a number of the Debtor's aircraft, replacement parts, equipment, and jet fuel will be located in the United States and thus potentially subject to adverse actions by creditors and other parties in interest.

23. Chapter 15 of the Bankruptcy Code is aimed at preventing such negative effects.

## RELIEF REQUESTED

24. By this Application, the Foreign Representatives respectfully request that this Court, under Sections 105(a) and 1519(a) of the Bankruptcy Code, enter (a) immediately a temporary restraining order, substantially in the form attached hereto as Exhibit 1, ordering the application of Sections 361 and 362 of the Bankruptcy Code to the Chapter 15 Case pending a ruling on the Foreign Representatives application for a preliminary injunction; and (b) a preliminary injunction, substantially in the form attached hereto as Exhibit 2, ordering the application of Sections 361 and 362 of the Bankruptcy Code to the Chapter 15 Case pending the Court's decision on the Petition. The Foreign Representatives request that the requested orders:

(a) order that the protections of Sections 361 and 362 of the Bankruptcy Code apply to the Debtor and its assets in the United States;

(b) establish the Foreign Representatives as the representatives of the Debtor with full authority to administer the Debtor's assets and affairs in the United States, including, without limitation, making payments on account of the Debtor's obligations;

(c) enjoin all persons and entities from seizing, attaching and/or enforcing or executing liens or judgments against the Debtor's property in the United States or from transferring, encumbering or otherwise disposing of, interfering with, or terminating any contractual or other rights with respect to the Debtor's

        assets or agreements in the United States without the express consent of the Foreign Representatives;

(d)   enjoin all persons and entities from commencing or continuing, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against the Debtor or its assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against the Debtor or its assets or proceeds thereof;

(e)   entrust the administration and realization of all of the Debtor's assets in the United States to the Foreign Representatives, including all of the Debtor's assets located in the United States or which may have been transferred to third parties in the United States; and

(f)   provide that the Foreign Representatives are authorized to examine witnesses, take evidence and deliver information concerning the Debtor's assets, affairs, rights, obligations or liabilities.

## **BASIS FOR RELIEF**

25.   Upon this Court's recognition of the Foreign Main Proceeding as a "foreign main proceeding," the automatic stay provided by Section 362 of the Bankruptcy Code will immediately and without exception apply with respect to all property of the Debtor that is within the territorial jurisdiction of the United States. *See* 11 U.S.C. § 1520(a)(1). Yet unlike in a typical corporate-reorganization case under Chapter 11, the automatic stay does not protect the Debtor's assets or businesses in the United States from the moment that it filed its Petition; instead, the stay does not come into effect until the date on which this Court enters the order recognizing the Foreign Main Proceeding, which could be weeks after the Petition is filed.

9

26. Thus, the Foreign Representatives are seeking, under Section 1519(a) of the Bankruptcy Code, the immediate entry of a temporary restraining order, as well as entry of a preliminary injunction applying the automatic stay to the Debtor's assets until the Court rules on the Debtor's Petition.

I. **The Debtor Urgently Needs Relief Under Section 1519(a) to Protect Its Assets in the United States.**

27. Section 1519 of the Bankruptcy Code permits a foreign representative to request that this Court provide certain provisional relief to foreign debtors, including relief similar to the automatic stay that will apply pursuant to Section 1520 of the Bankruptcy Code upon this Court's entry of the order recognizing the Foreign Main Proceeding. Courts grant such relief where it is "urgently needed" to protect the foreign debtor's assets in the United States. *See* 11 U.S.C. §1519(a). Generally, such relief may include a stay against execution against the debtor's assets, but may also include essentially any other Bankruptcy Code provisions other than those listed in Section 1521(a)(7) of the Bankruptcy Code. *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850 (Bankr. C.D. Cal. 2008) (granting interim stay relief to foreign debtor and noting that "a number of other provisions of the bankruptcy code may be applied provisionally under Section 1519 while an application for recognition is pending").

28. The Debtor, an operator of a global airline enterprise with significant assets and creditors in the United States, urgently requires protection of its United States assets and contractual interests to facilitate its Foreign Main Proceeding in Germany. The uncertainty and fear of disruption to its global operations that will be brought about absent such relief threatens to disrupt operations and undermine the confidence of the Debtor's customers and suppliers, causing the Debtor considerable distraction as it moves forward with its Foreign Main Proceeding or worse, disrupting the Debtor's flight operations. Such developments would hinder the Debtor's ability to operate its airline business at even the most basic level,

causing severe disruption to the Debtor's flight schedules and seriously damaging the Debtor's credibility in the marketplace during a time of heightened scrutiny.

29. In order to ensure that the Debtor's United States creditors and other parties cannot disrupt the Debtor's operations, including by taking actions against the Debtor's aircraft or other critical assets in the United States, the Debtor has filed a Petition and this Application to provide essential protection of its assets located within the territorial limits of the United States and its global business operations.

30. For the reasons stated above, the Debtor will be harmed if this Court does not grant the relief requested herein. Thus, a stay prohibiting adverse actions against the Debtor and its assets, as contemplated in Section 1519 of the Bankruptcy Code, is "urgently needed" to protect the Debtor's assets until the date on which this Court enters the recognition order.[3]

**II.    The Debtor Satisfies the Injunction Standards Under Section 1519(e).**

31. Provisional relief under Chapter 15 of the Bankruptcy Code is conditioned on the foreign representative's demonstrating that a debtor meets the standards applicable to an injunction. *See* 11 U.S.C. § 1519(e); *In re SPhinX, Ltd.*, 351 B.R. 103, 111 n.8 (Bankr. S.D.N.Y. 2006) ("Section 1519 of the Code provides that the bankruptcy court may grant provisional relief, under the standards, procedures and limitations applicable to an injunction . . . ."). "A party seeking a preliminary injunction must either show that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in his favor; and that an injunction is in the public interest." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015).

---

[3] This Court is well aware of the extensive first-day motions routinely granted in large Chapter 11 airline cases that address many of the particular operational issues faced by those airlines when commencing a restructuring. *See, e.g.*, *In re Mesa Air Grp., Inc.*, Case No. 10-10018 (MG) (Bankr S.D.N.Y. Jan. 5, 2010); *In re Delta Air Lines, Inc.*, Case No. 05-17923 (CGM) (Bankr. S.D.N.Y. Sept. 14, 2005), *In re Nw. Airlines Corp.*, Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Sept. 14, 2005); *In re Ionosphere Clubs, Inc.*, Case No. 89-10448 (BRL) (Bankr. S.D.N.Y. Mar. 9, 1989).

11

Alternatively, "he may show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Id.* (internal quotation marks omitted). The Foreign Representatives satisfy that standard here.

### A.     The Debtor Faces Irreparable Harm.

32.     Courts have recognized in foreign proceedings brought under former Section 304 to the Bankruptcy Code, the predecessor to Chapter 15, that "dissipation of the finite resources of a debtor's estate constitutes irreparable injury," justifying a court to intervene on behalf of the debtor. *See In re Netia Holdings S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002). The premature attachment or realization against property involved in a foreign proceeding also constitutes irreparable injury. *See, e.g.*, *In re Caldas*, 274 B.R. 583, 598 (Bankr. S.D.N.Y. 2002) ("[I]t is clear that the irreparable injury requirement is satisfied . . . [as to] efforts on the part of Tribank or others to attach, execute upon, or otherwise enforce judgments against [the debtor's] property."); *In re MMG, LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) (holding that "irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors"). Indeed, the very purpose of the automatic stay is to protect the debtor "from the pressure and harassment of creditors seeking to collect its claims . . . [and to] provide[] breathing space to permit the debtor to focus on its rehabilitation or reorganization. *See* 3 Collier on Bankr. ¶ 362.03; *see also* H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) (noting that the stay "gives the debtor a breathing spell from his creditors").

33.     Here, the Debtor does not enjoy the benefits of the stay automatically upon filing the Petition and thus faces the prospect of considerable harm and disruption to its operations from creditors and other parties in interest potentially taking action against its

12

United States assets and businesses. Such action could derail the Debtor's ability to continue as a going concern during the pendency of its Foreign Main Proceeding.

34. That alone constitutes irreparable harm. Courts have held that irreparable harm exists even if the assets of a foreign estate are merely threatened. *See In re Manning*, 236 B.R. 14, 24 (9th Cir. BAP 1999); *In re Gercke*, 122 B.R. 621, 626 (Bankr. D.D.C. 1991).

35. The threat that one or more of the Debtor's planes could be seized while temporarily in the United States without prior warning or ability to seek relief from this Court constitutes irreparable harm. Moreover, the Debtor maintains contracts at eight United States airports in New York, Boston, Chicago, Fort Myers, Los Angeles, Miami, Orlando, and San Francisco to lease space at these airports, as well as to perform services such as ground handling, aircraft maintenance, fuel supply, and ticket services. Many of the Debtor's contracts relating to its United States operations are terminable upon the commencement of insolvency proceedings by the Debtor and without advance notice. Therefore, without the relief requested by this Application, many creditors and contractual counterparties could take action at any time that would jeopardize the Debtor's ability to continue operating its business during the pendency of the Foreign Main Proceeding.

36. The result would be that the Debtor's U.S. assets would be prematurely "pieced out" and dissipated—a form of irreparable injury. *See In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) (noting that "the premature piecing out of property involving a foreign . . . proceeding constitutes irreparable injury"). Further, the Debtor's business partners and contract counterparties may use the Foreign Main Proceeding as a pretext to terminate unfavorable contracts, require security deposits, tighten credit terms, or take other detrimental business acts against the Debtor. Such adverse actions would significantly undermine the Foreign Main Proceeding, causing the Foreign Representatives, the Debtor,

13

the Debtor's creditors, and other parties in interest irreparable harm. The Debtor thus faces irreparable harm in the absence of the requested relief.

**B.      The Likelihood of Success on the Merits Is High.**

37.     The Foreign Representatives have a strong likelihood of success on obtaining recognition of the Foreign Main Proceeding. Indeed, as set forth in the Petition, the Foreign Representatives are likely to show that the Foreign Main Proceeding is not only a "foreign proceeding" but also a "foreign main proceeding" as defined in Section 1502(4) of the Bankruptcy Code. *See* Pet. ¶¶ 27-42. The Petition also shows that the Foreign Representatives are likely to demonstrate that they are the "foreign representatives" of the Debtor as defined in Section 101(24) of the Bankruptcy Code. *See* Pet. ¶¶ 43-44. Thus, the likelihood of success on the underlying merits here is high.

**C.      The Balance of Hardships Weighs in Favor of the Debtor.**

38.     The Foreign Representatives submit that the Debtor's irreparable harm in the absence of provisional relief significantly outweighs any harm to the Debtor's creditors, business partners, contract counterparties and other stakeholders caused by entry of provisional relief. Specifically, the issuance of a preliminary injunction enjoining any actions or proceedings against the Debtor and its assets, as well as recognizing the Foreign Representatives' exclusive authority to control, manage, or use the Debtor's assets, will cause minimal hardship to any persons subject to the preliminary injunction. Indeed, the Foreign Representatives are requesting only that this Court grant the preliminary relief from the date of the hearing on the Application to the date of the hearing on the recognition order, a period of less than 30 days. Further, the Foreign Representatives are seeking only to maintain the status quo in order to protect and preserve the Debtor's assets. And parties subject to the provisional relief have recourse: they may ask this Court at any time to modify the injunction.

**D.      Granting an Injunction Would Be in the Public Interest.**

39.     Public policy heavily favors granting a preliminary injunction. In enacting Chapter 15, Congress intended for U.S. courts to recognize and give effect to restructuring and insolvency proceedings in foreign jurisdictions where a debtor has its center of main interests or an establishment. Comity is important to cross-border restructurings, and just as U.S. courts want foreign courts to respect their orders, this Court should defer to the Foreign Main Proceeding. *See* 11 U.S.C. § 1501. Indeed, the "firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction." *Cornfeld v. Inv. Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979). For these reasons, the public interest weighs in favor of granting an injunction.

**III.    The Debtor Satisfies the Requirements for a Temporary Restraining Order.**

40.     In addition to seeking provisional application of a preliminary injunction authorizing the stay and other relief pending this Court's recognition of the Foreign Main Proceeding as a "foreign main proceeding," the Foreign Representatives also seek immediate entry of a temporary restraining order to protect the Debtor's businesses from disruption before the hearing on the Application.

41.     Under Federal Rule of Civil Procedure 65(b), to obtain an *ex parte* temporary restraining order, an applicant must show that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." *See, e.g., TKR Cable v. Cable City Corp.*, 267 F.3d 196, 198 (3d Cir. 2001) (granting *ex parte* temporary restraining order to prohibit sale, consummation of which would have prejudiced parties in interest); *Gorman v. Coogan*, 273 F. Supp. 2d 131, 134 (D. Me. 2003) (issuing *ex parte* temporary restraining order to prevent corporation from indemnifying directors' expenses because company faced imminent bankruptcy if order was

15

not entered); *see also MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF Global Holdings Ltd.)*, 562 B.R. 55, 64 (Bankr. S.D.N.Y. 2017) ("[T]he standards for a temporary restraining order and a preliminary injunction are not materially different.").

42. The Debtor's businesses and assets subsequent to commencement of the Foreign Main Proceeding and the Chapter 15 Case are substantially exposed to adverse creditor action. And as with any major airline, the Debtor's primary source of revenue is generated from use of its aircraft. Seizure of even one aircraft would harm the Debtor's revenue, disrupt flight schedules and potentially cause customers to turn to competitor airlines, thus destroying the Debtor's goodwill. Further, if the Debtor's assets located in the United States are left unprotected, creditors would be free to exercise remedies against such assets, frustrating the Debtor's efforts in the Foreign Main Proceeding and harming the value of the Debtor's estate. Indeed, using the Foreign Main Proceeding as pretext, the Debtor's business partners and contract counterparties may impose more stringent credit terms, terminate contracts, seek security deposits or take other adverse actions to the Debtor's business.

43. Importantly, while there is currently a stay in place in the Foreign Main Proceeding preventing any enforcement measures against the Debtor, it is uncertain whether the Debtor's U.S. creditors would abide by or respect the stay granted by the German Court as authorized by the German Insolvency Code. Given this uncertainty, it is imperative that the Debtor—and its customers, suppliers, and key creditor constituencies—have the assurance from this Court through imposition of a stay and other relief provided under Section 1519 of the Bankruptcy Code, that parties adverse to the Debtor will not take actions detrimental to the Debtor's interests.

44. The propriety of provisional injunctive and related relief in comparable circumstances, including a temporary restraining order, has been recognized in several

Chapter 15 cases in this and other districts. *See, e.g.*, *In re: Alitalia – Società Aerea Italiana S.P.A. in Amministrazione Straordinaria*, Case No. 17-11618 (SHL) (Bankr. S.D.N.Y. June 28, 2017) (order granting temporary restraining order and a preliminary injunction); *In re Alitalia Linee Aeree Italiane S.p.A.*, Case No. 08-14321 (BRL) (Bankr. S.D.N.Y. Nov. 5, 2008) (same); *In re Namirei-Show A Co., Ltd.*, Case No. 08-13256 (BRL) (Bankr. S.D.N.Y. Aug. 22, 2008) (same); *In re Baronet U.S.A., Inc.*, Case No. 07-13821 (JMP) (Bankr. S.D.N.Y. Dec. 4, 2007) (same); *In re Afinsa Bienes Tangibles SA*, Case No. 07-10675 (JMP) (Bankr. S.D.N.Y. Mar. 15, 2007) (same).

45.    Based on the foregoing and on the facts described in the Kebekus Declaration, the Foreign Representatives respectfully request that this Court grant the relief requested in this Application.

**IV.    The Foreign Representatives Request Scheduling of a Hearing for Preliminary Injunctive Relief.**

46.    The Foreign Representatives respectfully request that this Court set a date for the hearing on its request for a preliminary injunction, as well as a date by which objections must be filed (the "Objection Deadline"). The Foreign Representatives propose that, if no objections are filed by the Objection Deadline, this Court enter the proposed preliminary injunction at a hearing to be scheduled at the Court's convenience.

**SATISFACTION OF LOCAL BANKRUPTCY RULE 9013-1(A)**

47.    The Application includes citations to the applicable rules and statutory authorities upon which the requested relief requested is based, and a discussion of its application to the Application. Accordingly, the Application satisfies Local Bankruptcy Rule 9013-1(a).

**NOTICE**

48.    The Foreign Representatives propose to serve copies of the temporary restraining order and preliminary injunction, and all related documents, as soon as practicable

via overnight mail and/or email, to (a) the Foreign Representatives; (b) the U.S. Trustee – Region 2; (c) the Federal Aviation Administration; (d) the Federal Transit Administration; (e) all parties to litigation currently pending in the United States in which the Debtor is a party; (f) United States Department of Justice; (g) all airport authorities at which the Debtor has operations; (h) all known U.S. creditors; and (i) all other parties against whom the Debtor is seeking preliminary relief pursuant to Section 1519 of the Bankruptcy Code. In light of the relief requested, the Foreign Representatives submit that no further notice is necessary. The Foreign Representatives believe that such notice and service is reasonable and proper under the circumstances and complies with Bankruptcy Rule 2002(q).

## **NO PRIOR REQUEST**

49. No previous request for the relief requested herein has been made to this or any other court.

## **WAIVER OF FEDERAL RULE OF CIVIL PROCEDURE 65(C)**

50. Bankruptcy Rule 7065 expressly provides that "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)." To the extent that Federal Rules of Civil Procedure 65(c) applies, the Foreign Representatives believe that the security requirements imposed by Rule 65(c) are unwarranted under the circumstances and, accordingly, respectfully request a waiver of such requirements pursuant to Bankruptcy Rule 7065.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Foreign Representatives respectfully request (a) immediate entry of a temporary restraining order, substantially in the form attached hereto as <u>Exhibit 1</u>; (b) entry of an order, substantially in the form attached hereto as <u>Exhibit 2</u>, granting a preliminary injunction pending this Court's entry of an order recognizing the Foreign Main Proceeding as a "foreign main proceeding"; (c) scheduling of a hearing on the Application; and (d) such other and further relief as is just and proper

New York, New York
Dated: August 18, 2017

                                */s/ Madlyn Gleich Primoff*

                                Madlyn Gleich Primoff, Esq.
                                Abbey Walsh, Esq.
                                FRESHFIELDS BRUCKHAUS DERINGER US LLP
                                601 Lexington Avenue
                                New York, New York 10022
                                Telephone:    (212) 277-4000
                                Facsimile:    (212) 277-4001

                                Attorneys for the Foreign Representatives